## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BIZZIE WALTERS, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: RDB-11-0751 |
| TODD MCMAHEN, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

On March 22, 2010, Plaintiffs Bizzie Walters, Annie Hodge, Annette Baldwin, Katrena Cooper and Barbara Allen filed a Class Action Complaint in the United States District Court for the Middle District of Alabama and initiated this class action lawsuit. Plaintiffs name as Defendants twenty-nine current and former Perdue Farms, Inc. ("Perdue") employees.[1] In a one count conspiracy claim, Plaintiffs allege that Defendants conspired to depress the wages of the legal, hourly-paid employees of Perdue in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* through a scheme of hiring and falsely attesting to the work authorization of large numbers of illegal immigrants.

On May 28, 2010, Defendants filed a motion for joinder of Perdue, transfer of venue and / or dismissal and for stay of discovery. (ECF No. 61). Concurrently, Perdue filed a motion to intervene in the suit. (ECF No. 63). Subsequently, Plaintiffs filed a First Amended Class Action Complaint (ECF No. 80) on June, 18, 2010. Plaintiffs filed this action on behalf of themselves

---

[1]Todd McMahen, Tol Dozier, Nancy Hollis, Alberto Asyn, Elana Asyn, Richard Jamison, Jim Hungate, Amparo Herrera, Maria Salizar Gonzalez, Jeff Beckman, Jerry Layne, David Castro, Angie Wood, Julio Unzueta, Emperatriz "Paola" Beatty, Jim Booth, Terry Ashby, Jeanette Cox, Sandra Herrera, Leslie Cox, Gustavo "Gus" Paez, Randy Brown, Efrem Andrews, Gilberto "Fernando" Rivera, Bennie Gray, Charlie Carpenter, Bel Holden, Rob Helfin, and Gary Miller (collectively, "Defendants").

and on behalf of a class consisting of all other persons legally authorized to be employed in the U.S., who have been employed at any of the Perdue facilities identified in this action as hourly wage earners in the four years prior to the filing of this case and up through trial. Am. Compl. ¶ 185. On March 18, 2011, this case was transferred from the Middle District of Alabama to this Court, (ECF No. 147) and on April 5, 2011, Perdue withdrew its motion to intervene. (ECF No. 163).

Presently pending before this Court is Defendants' Motion for Dismissal (ECF No. 61).[2] The Defendants move to dismiss on the ground that Plaintiffs fail to state a claim for relief under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Plaintiffs have filed a response in opposition to Defendants' motion (ECF No. 179). The parties' submissions have been reviewed and this Court held a hearing on June 9, 2011, pursuant to Local Rule 105.6 (D. Md. 2010)[3]

The Plaintiffs' one count civil RICO claim in this case relies on an expansive legal theory previously rejected by other United States District Courts. Essentially, the claim is that mid-level human resources employees have engaged in a conspiracy to indirectly enrich themselves by causing Perdue to violate United States immigration laws, thereby increasing its net profit, thereby increasing the potentiality of higher salaries for its employees. *See infra* n.13. This claim is simply not plausible. The logical extent of that legal theory would be to create civil RICO causes of action as to any allegedly illegal human resources decisions made by mid-level corporate employees. Furthermore, even if this theory were plausible, a corporation cannot conspire with its employees and, with rare exception, employees of a corporation, when acting

---

[2] Defendants' motion to dismiss was filed as part of the joint motion for joinder of Perdue, transfer of venue and stay of discovery, (ECF No. 61) filed in advance of the First Amended Complaint, but still deemed to be applicable to that amended complaint.

[3] The parties agreed that the pending Motion to Dismiss is applicable to the amended complaint.

within the scope of their employment, cannot conspire among themselves. No exceptions to this intracorporate conspiracy doctrine, well recognized by the United States Court of Appeals for the Fourth Circuit, apply in this case. As the Plaintiffs simply have no discernible independent personal stake in this matter, any effort to further amend their complaint would be futile. Accordingly, for the reasons that follow, Defendants' Motion to Dismiss (ECF No. 61) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

## I. Background

In ruling on a motion to dismiss, "[t]he factual allegations in the Plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Defendants are employees of Perdue, the alleged third largest poultry processing company in the United States. Am. Compl. ¶ 6. Perdue is headquartered in Salisbury, Maryland and owns and operates poultry processing facilities in Dothan, Alabama; Perry, Georgia; Monterey, Tennessee; Cromwell, Kentucky; Dillon, South Carolina; Accomac, Virginia; Bridgewater, Virginia; Concord, North Carolina; Georgetown, Delaware; Lewiston, North Carolina; Milford, Delaware; Rockingham, North Carolina; Salisbury, Maryland; and Washington, Indiana. *Id.* ¶ 3, 4. Plaintiffs allege that "Corporate Co-Conspirators," including defendants Helfin and Miller, conspired with unnamed "Facility Co-Conspirators" and the other named Defendants, employees in Perdue's Human Resources ("HR") departments, to implement a scheme of hiring illegal immigrants. *Id.* ¶ 43. Plaintiffs allege that these hiring practices save Perdue millions of dollars in labor costs because illegal immigrants will work longer hours for lower wages than American citizens. *Id.* ¶ 43. Plaintiffs allege that these practices depress the wages of Perdue's legally authorized workers. *Id.* ¶ 184.

Plaintiffs state that corporate management directs HR managers and their staff members to accept false documents from illegal immigrants and to falsely attest to the authenticity of such documents in the hiring process. *Id.* ¶ 45. Plaintiffs allege that Defendants therefore engage in a host of illegal practices, including but not limited to: hiring workers who were previously employed at Perdue using different identifications, hiring workers known to be present in the United States illegally or using facially false documents, and hiring workers who use multiple sets of documents in order to work extra shifts. *Id.* ¶ 46.

Plaintiffs allege that these practices are pervasive and that a scheme of illegal hiring is in place at each of Perdue's processing facilities. *Id.* ¶ 184. At the Dothan plant, for example, Plaintiffs allege that Defendants Dozier, Hollis, Alberto Asyn, Elana Fernandez and other unnamed parties in the HR department use "some or all" of the hiring practices alleged in ¶¶ 45-46. *Id.* ¶ 68. Plaintiffs lay out the corporate hierarchy at the plant, stating that Dozier is responsible for assisting McMahen and other corporate officers in setting the class's wages below market rates. Plaintiffs further assert that McMahen knows and approves of an immigration law conspiracy at the Dothan facility. *Id.* ¶ 74. Plaintiffs repeat functionally the same argument as to the named Defendants at the Perry facility, *Id.* ¶¶ 80-90; the Monterey facility, *Id.* ¶¶ 91- 105; the Cromwell facility, *Id.* ¶¶ 106-21; the Dillon facility, *Id.* ¶¶ 122-35; and the Accomac facility, *Id.* ¶¶ 136-48. Plaintiffs further allege, on information and belief, that the same illegal hiring conspiracy is in place at Perdue's eight other facilities: Bridgewater, *Id.* ¶¶ 149-52; Concord, *Id.* ¶¶ 153-56; Georgetown, *Id.* ¶¶ 157-60; Lewiston, *Id.* ¶¶ 161-64; Milford, *Id.* ¶¶ 165-68; Rockingham, *Id.* ¶¶ 169-72; Salisbury, *Id.* ¶¶ 173-76 Washington, *Id.* ¶¶ 177-80.

Plaintiffs allege that Perdue's hiring practices are RICO predicate acts.[4] First, Plaintiffs allege that certain Defendants violated 8 U.S.C. § 1324(a)(3)(A),[5] a predicate offense under 18 U.S.C. § 1961(1)(F), by knowingly hiring hundreds of unauthorized and fraudulently documented workers, who had been brought into the United States from Mexico with assistance. *Id.* ¶ 53, 54. Second, Plaintiffs allege that certain Defendants violated 18 U.S.C. §§ 1546(b)(1), (2) and (3), racketeering acts under 18 U.S.C. § 1961(1)(B), by accepting fake or fraudulent documents from newly hired workers and making false attestations as to their legal status on I-9 forms.[6] *Id.* ¶ 56, 57. Conducting the affairs of an enterprise through a pattern of racketeering activity is illegal under 18 U.S.C. § 1962(c), and Plaintiffs therefore allege that Defendants, though their scheme of illegal hiring violated § 1962(d), which finds unlawful any conspiracy to violate § 1962(a)-(c).

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and

---

[4] Section 1961 of RICO defines the operative terms of § 1962 - § 1968. "Racketeering activity" is defined in § 1961 through a set of predicate violations – violations of other enumerated statutes.

[5] "Any person, who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens as described in subparagraph (B) shall be fined under title 18 or imprisoned for not more than 5 years, or both. (B) An alien described in this subparagraph is an alien who – (i) is an unauthorized alien (as defined in section 1324a(h)(3) of this title), and (ii) has been brought into the United States in violation of this subsection." 8 U.S.C. § 1324(a)(3).

[6] All United States employers must complete and retain a Form I-9 for each individual they hire for employment in the United States verifying employment eligibility.

"construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See id.* (noting that "courts are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. at 1937, 1950 (2009).

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

### III. Analysis

**A. Failure to State a Claim**

Under the Racketeer Influenced and Corrupt Organizations Act, it is unlawful for "any person employed by or associated with any enterprise" to conduct "such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. 8 U.S.C. § 1962(c). Section 1961 of RICO spells out specific acts which are predicate violations. Section 1961(1)(F)[7] defines a violation of 8 U.S.C. § 1324(a)(3)(A) as a RICO predicate act. Under § 1961(1)(B)[8] violations of 18 U.S.C. §§ 1546(b)(1), (2) and (3)[9] are likewise predicate offenses.

Under § 1962(d) it is unlawful to conspire to violate any provision of § 1962 (a), (b) or (c) of RICO. To plead a violation of § 1962(d), a plaintiff must allege that "each defendant agreed that another coconspirator would commit two or more acts of racketeering." *Proctor v. Metro. Money Store Corp., et al.*, 645 F. Supp. 2d 464, 477 (D. Md. 2009) (quoting *United States v. Pryba*, 900 F.2d 748, 760 (4th Cir. 1990)).

---

[7] "Any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 274 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to import of aliens for immoral purpose) if the act indictable under such section of Act was committed for the purpose of financial gain." 18 U.S.C. § 1961(1)(F).

[8] "(B) any act which is indictable under any of the following provisions of title 18, United States Code: section 1546 (relating to fraud and misuse of visa, permits and other documents)." 18 U.S.C § 1961(1)(B).

[9] "Whoever uses – (1) an identification document, knowing (or having reason to know) that the document was not issued lawfully for the use of the possessor, (2) an identification document knowing (or having reason to know) that the document is false, or (3) a false attestation, for the purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act, shall be fined under this title, imprisoned for not more than 5 years or both." 18 U.S.C. § 1546(b)(1)-(3).

Plaintiffs bring a one count conspiracy claim under § 1964(c)[10] for a violation of § 1962(d), alleging predicate violations under § 1324(a)(3)(A) and 18 U.S.C. §§ 1546(b)(1) - (3). Amend Comp. ¶ 181. Plaintiffs assert that Federal Rule of Civil Procedure 8, not Federal Rule of Civil Procedure 9(b) should govern the pleading of these claims. Pls.' Opp'n at 14.[11] However, this Court need not reach a decision on the appropriate pleading standard; Plaintiffs fail to state a claim under the lower threshold of Rule 8, and would necessarily fail under the more rigorous Rule 9(b).[12]

Regardless of the pleading standard applied, Plaintiffs fail to state a claim. Plaintiffs present no more than conclusory allegations to suggest that the Defendants formed a conspiracy under 18 U.S.C. § 1962(d). Plaintiffs allege a scheme of illegal hiring in which supervisors direct HR staff members to violate immigration laws. Amend Comp. ¶ 45. In a similar civil RICO case alleging predicate violations of §1324(a) and §1546 brought in the Northern District of Alabama, the Court explained the standard of pleading under § 1962(d), stating that plaintiffs must "describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy and the date and substance of the conspiratorial agreement." *Cruz v. Cinram Intl. Inc.*, 574 F. Supp. 2d 1227, 1236 (N.D. Ala. 2008). Here, Plaintiffs fail to provide any facts

---

[10] "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale or securities to establish a violation of section 1962." 18 U.S.C. § 1964(c).

[11] The Defendants have alternatively argued that the complaint does not satisfy the pleading requirement of either Rule 8 or Rule 9(b).

[12] Parenthetically, this Court will note, however, that it appears that Rule 9(b) does apply to the allegations of false attestation which are part of the claims under §§ 1546(b)(1), (2) and (3). The pleading standard of Rule 9(b) applies to "all averments of fraud." *Hershey v. MNC Fin., Inc.*, 774 F. Supp. 367, 376 (D. Md. 1991). This Court recently found that when the alleged racketeering sounds in fraud, plaintiffs asserting RICO claims must meet the pleading standard of Rule 9(b). *Kun Lee v. PMG 1001, LLC*, No. RDB-09-1514, 2010 WL 14823 at *3 (D. Md. January 11, 2010). Plaintiffs' claims of "false attestation" under §1546 sound in fraud and therefore should meet the Rule 9(b) pleading standard.

indicative of such an agreement, including when or where the agreement took place, or the specific substance of any communications between management and HR staff regarding hiring policy.  Plaintiffs do not state facts sufficient to present a "plausible" claim under *Twombly*.

Plaintiffs also fail to adequately plead agreement to the conspiracy on the part of each defendant, as required by the United States Court of Appeals for the Fourth Circuit in *United States v. Pryba*, 900 F.2d 748, 760 (4th Cir. 1990).  In *Pryba*, the court found that to support a conspiracy conviction under § 1962(d), each defendant must agree that he or another would violate § 1962(c).  *Id.* at 760.  Plaintiffs repeat that at each facility Defendants use "some or all" of the illicit hiring practices alleged, Am. Compl. ¶ 71, but Plaintiffs fail to detail the personal agreement or involvement of each defendant.  Moreover, as to eight of the Perdue facilities, Plaintiffs offer no facts supporting their allegations of predicate violations and conspiracy.  They have pled on information and belief alone.  Plaintiffs' claims rest heavily on conjecture; they have not advanced their allegations beyond a "speculative level" as *Twombly* requires.  *Twombly*, 550 U.S. at 555.

Plaintiffs' claims as to the predicate RICO violations are similarly insufficient.  In *Beck v. Prupis*, the Supreme Court held that "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)."  529 U.S. 494, 505 (2000).  Thus Plaintiffs must plead facts sufficient to support a plausible inference that the alleged conspiracy actually gave rise to acts of racketeering which were the proximate cause of the Plaintiffs' injury.

A violation § 1324(a)(3)(A) occurs when an individual knowingly hires at least 10 individuals who are aliens, with knowledge that these individuals were brought into the United

States in violation of the subsection. Plaintiffs' pleading of this predicate violation is simply a recitation of the statute:

> "They have personally hired hundreds of workers (and more than ten per year, each) with actual knowledge that the workers were unauthorized for employment, used fraudulent identity documents that did not pertain / relate to them, and had been brought into the country with the assistance of others on their illicit journey across the U.S.-Mexico border. . . ."

Am. Compl. ¶ 54. Plaintiffs do not identify a single worker specifically known to be an illegal alien. Rather, Plaintiffs only allege in a conclusory fashion that Defendants at various facilities "observe[] the largely illegal workforce and know[] that most of these people are not U.S. citizens." Am. Compl. ¶ 83. Additionally, Plaintiffs allegations as to the means by which the illegal workers were brought into the country are unfounded. Plaintiffs state only: "on information and belief, Defendant Paez is also responsible for directly working with 'coyotes' and 'runners' to obtain employment at Perdue for the illegal immigrants when they arrive in the local community." *Id.* ¶ 108. This conclusion is not supported by any facts and is not entitled to judicial deference.

Plaintiffs likewise fail to state a claim under the predicate violation of 18 U.S.C. §§ 1546(b)(1)-(3). Plaintiffs explain that Defendants attest, under penalty of perjury, to the veracity of workers' identification documents when filling out I-9 forms. *Id.* ¶ 58. Plaintiffs' complaint states: "this is a false attestation because the HR staff members know the documents presented are fake / fraudulent." *Id.* ¶ 58. The HR staff's alleged knowledge stems from being "directed by their superiors to accept . . . false documents and make these false attestations," and from the alleged hiring practices themselves, which include "hiring workers who are known to have previously been employed at Perdue under different identities" or "hiring workers whose background information . . . is plainly invalid and / or inconsistent on its face." *Id.* ¶ 46.

Plaintiffs again fail to give any specific examples of known illegal employees, workers whose papers were found to be facially fraudulent or workers hired for multiple shifts using dual identities. Plaintiffs do not provide any underlying facts supporting the statement that these practices are taking place.

Additionally, under § 1964(c) a Plaintiff must plead injury to "business or property by reason of" the violation of the violation of § 1962(d). Plaintiffs allege that the "hourly wages for the Class . . . are depressed below market levels (the going rate for unskilled labor in the area by employers which do not employ illegal workers)." Am. Compl. ¶ 73. Plaintiffs state no underlying data or figures to support assertion. The complaint states no facts addressing: (1) the wages of any class members (2) the market wage of area employers who do not employ illegal workers (3) how the Plaintiffs can purport to determine which area employers do and do not "employ illegal workers" for purposes of calculating market wages. Plaintiffs, therefore, cannot sustain a claim because they fail to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

This Court's decision to dismiss this case is bolstered by the recent failure of substantially similar civil RICO claims relying on identical legal theories brought in district courts throughout the country. *See Nichols v. Mahoney*, 608 F. Supp. 2d 526 (S.D.N.Y. 2009); *Trollinger v. Tyson Foods*, 543 F. Supp. 2d 842 (E.D. Tenn. 2008); *Hall v. Thomas*, 753 F. Supp. 2d 1113 (N.D. Ala. 2010).[13] In *Nichols*, for example, the Southern District of New York dismissed a civil RICO claim alleging the same predicate violations of immigration statutes as in

---

[13]Two legally and factually analogous cases against poultry processors, *Trollinger v. Tyson Foods*, 543 F. Supp. 2d 842 (E.D. Tenn. 2008) and *Hall v. Thomas*, 753 F. Supp. 2d 1113 (N.D. Ala. 2010), were found to be without merit and were decided for the defendants on summary judgment. While these cases did survive motions to dismiss, both cases were filed pre-*Iqbal* and therefore are of limited value in analyzing the legal sufficiency of the pleading in the instant case. Both *Trollinger* and *Hall* are nevertheless indicative of the lack of factual backing characterizing this particular strain of civil RICO cases based on alleged use of illegal immigrant labor. In both cases, defendants were subjected to a lengthy discovery process for identical allegations.

the instant case. As in this case, the *Nichols* court found that the plaintiffs failed to provide adequate factual information to sustain a claim, and noted that unlawful employment of aliens is *not* a RICO predicate act — only the hiring of "illegal aliens who are known to have been smuggled ('brought') into the United States" qualifies as a RICO predicate offense. *Nichols*, 608 F. Supp. 2d at 534.

Moreover, while Plaintiffs rely heavily in their analysis on the *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir. 2006) line of cases,[14] *Mohawk* is readily distinguishable from the instant case. In *Mohawk*, the conspiracy outlined involved named third party recruiters who conspired with Mohawk employees to bring undocumented aliens across the border for employment purposes. *Id.* at 1281-2. In this case, by contrast, the conspiracy alleged involves no third party efforts and the complaint contains almost no facts regarding the arrival of the allegedly illegal workers in the United States. Moreover, *Mohawk* was decided pre-*Iqbal*, limiting its precedential value. *Nichols*, 608 F. Supp. 2d at 538. Substantial reliance on *Mohawk* does little to advance Plaintiffs' claims.

**B. The Intracorporate Conspiracy Doctrine**

Even if Plaintiffs' claims were sufficiently plausible, they are nevertheless barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine, developed in the antitrust context, holds that because the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy. *Marmott v. Maryland Lumber Co.*, 807 F.2d 1184 (4th Cir. 1986). As this Court has previously noted, a corporation cannot conspire with its employees — and employees, when acting within the scope of their employment, cannot conspire amongst themselves. *AGV Sports Group, Inc. v.*

---

[14] *Williams v. Mohawk Indus., Inc.*, 314 F. Supp. 2d 1333 (N.D. Ga. 2004), *aff'd in part, rev'd in part on other grounds by* 465 F.3d 1277 (11th Cir. 2006).

*Protus IP Solutions, Inc.*, No. RDB 08-3388, 2009 WL 1921152, at \*4-5 (D. Md. July 1, 2009). The United States Court of Appeals for the Fourth Circuit has identified two exceptions to the intracorporate conspiracy doctrine: (1) when a corporate officer has an "independent personal stake" in achieving the illegal objectives of the corporation, *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974); *Shoregood Water Co. v. United States Bottling Co.*, No. RDB 08-2470, 2009 WL 2461689 at \*7 (D. Md. Aug. 10, 2009); and (2) when the agent's acts are unauthorized. *Buschi v. Kirven*, 775 F.2d 1240, 1252-3 (4th Cir. 1985).

In *United States v. Gwinn*, No. 5:06-cv-00267, 2008 WL 867927 (S.D. W. Va. Mar. 31 2008), the Southern District of West Virginia engaged in a thorough review of the Fourth Circuit's continued application of the intracorporate conspiracy doctrine in civil RICO cases in light of the Supreme Court's decision in *Cedric Kushner Promotions Ltd. v. Don King et al.*, 533 U.S. 158 (2001). In *Cedric Kushner,* the Supreme Court found that a corporation's sole proprietor could be a natural person, and also an "enterprise" for the purposes of establishing liability under § 1962(c). *Id.* at 163. The Court made clear, however, that its holding created no inconsistency with "antitrust law's intracorporate conspiracy doctrine." *Id.* at 166. The court in *Gwinn* explained that while some courts have viewed *Cedric Kushner* as an indication that the intracorporate conspiracy doctrine should not be extended to RICO claims brought under § 1962(d) the Fourth Circuit has consistently found that the intracorporate conspiracy doctrine can be broadly applied to conspiracy cases, including civil RICO claims. *Gwinn*, 2008 WL 867927 at \* 22-23 (citing *Detrick v. Panalpina Inc.,* 108 F.3d 529, 544 (4th Cir. 1997)). While the Fourth Circuit has yet to rule directly on this issue, *Cedric Kushner* should not change this Circuit's analysis of the applicability of the intracorporate conspiracy doctrine to non-antitrust cases. *See Culver v. JBC Legal Group, P.C.*, No. 5:04-cv-389, 2005 WL 5621875, at \*6

(W.D.N.C. June 28, 2005) (unpublished) (holding that the intracorporate conspiracy doctrine is not limited to antitrust cases).

The Fourth Circuit has long held that "a single entity cannot conspire amongst itself." *Gwinn*, 2008 WL 867927, at * 23 (quoting *Cohn v. Bond,* 965 F.2d 154, 159 (4th Cir. 1991)). This principle has consistently been applied outside of the antitrust context. *See, e.g.*, *Buschi*, 775 F.2d at 1253 (holding the intracorporate conspiracy doctrine applicable to cases arising under 42 U.S.C. § 1983). Addressing § 1962(d) specifically, district courts in the Fourth Circuit pre-*Cedric Kushner* uniformly held that the intracorporate conspiracy doctrine can act to bar civil RICO claims brought under this section. *Sadighi v. Daghighfekr*, 36 F. Supp. 2d, 279 (D.S.C. 1999); *Huntingdon Life Sciences, Inc. v. Rokke*, 986 F. Supp. 982, 991 (E.D. Va. 1997); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 945 F. Supp. 901, 911-12 (W.D.N.C. 1996) *rev'd on other grounds*, 155 F. 3d 331 (4th Cir. 1998).

Post-*Cedric Kusher*, the Fourth Circuit has continued to apply the intracorporate conspiracy doctrine in non-antitrust conspiracy cases. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166 (4th Cir. 2002) (noting the general applicability of the intracorporate conspiracy doctrine to a non-antitrust conspiracy claim);[15] *Lewin v. Cooke*, 28 F.App'x 186 (4th Cir. 2002) (unpublished) (applying the intracorporate conspiracy doctrine to a state law conspiracy claim). In *ePlus*, for example, the court affirmed its pre-*Cedric Kushner* stance that "it is generally true that under the intracorporate immunity doctrine . . . corporate employees cannot conspire with each other or with the corporation." 313 F.3d at 179. Thus, claims brought under § 1962(d) likewise continue to be governed by the intracorporate conspiracy doctrine.

---

[15] In *ePlus*, the plaintiff brought a civil conspiracy claim under state law and RICO § 1962(d). The court noted the general applicability of the intracorporate conspiracy doctrine, but found that the case fell under the independent personal stake exception. As a result, the court did not specifically note whether it considered the intracorporate conspiracy doctrine in relation to the state law claim, the RICO claim, or both. *ePlus*, 313 F.3d at 179.

Applying the doctrine to the instant case, it is clear that Plaintiffs' claims are barred. The Defendants are all current or former employees of Perdue acting within the scope of their employment, Am. Compl. ¶ 45, and, as such, cannot conspire amongst themselves. Neither recognized exception applies. Plaintiffs specifically state that the Defendants were directed by management to pursue the particular hiring policy here alleged — there was no action outside the scope of the agents' authority. *Id.* Likewise, the independent personal stake exception has no bearing here. For that exception to apply, a conspirator must possess a personal interest independent and "wholly separable" from the interests of the corporation. *Selman v. Am. Sports Underwriters, Inc.*, 697 F. Supp. 225, 239 (W.D. Va. 1988). *See Greenville Publ'g Co.*, 496 F.2d at 399; *Gwinn*, 2008 WL 867927, at *25 ("Where a corporation's success is directly dependent on the agent's success in furthering the illegal activity, the two are directly related and are not 'wholly independent' of one another."). Plaintiffs here allege no interest on the part of the Defendants independent of their relationship with the Perdue corporation; Defendants' alleged interests and the profitability of the company are, instead, completely intertwined.[16] Therefore, Plaintiffs cannot sustain a claim under § 1962(d).

## IV. Dismissal with Prejudice

In *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008), the Fourth Circuit held that dismissal with prejudice was warranted where "amendment would be futile in light of the [complaint's] fundamental deficiencies." *See also Ganey v. PEC Solutions, Inc.*, 418

---

[16] At the hearing held by this Court on June 9, 2011, Plaintiffs explained that the alleged scheme aimed to increase Perdue's overall profitability. Plaintiffs alleged that greater profits would, in turn, benefit the Defendants in the form of higher wages and bonuses for "keeping labor costs low." Plaintiffs provided no facts supporting the conclusion that Defendants would, in fact, receive greater compensation from their alleged activities. *Cf. ePlus*, 313 F.3d at 179-80 (holding that the independent personal stake exception applied when a conspirator's aim was to profit by sending her employer into bankruptcy). Defendants, therefore, have no independent personal stake in the alleged scheme.

F.3d 379, 391 (4th Cir. 2005) (affirming a denial to leave to amend where any amendment would be futile).

Here, dismissal with prejudice is appropriate. Plaintiffs have no presently pending motion for leave to amend and a previous amendment did not cure fundamental deficiencies in the complaint. Plaintiffs continue to rely on conclusory allegations and boilerplate recitations of the elements of their cause of action. Moreover, even if Plaintiffs were able to meet the pleading standard of *Twombly* and *Iqbal*, the intracorporate conspiracy doctrine bars the expansive civil RICO claim proffered by the Plaintiffs. Thus, amendment of this complaint would be futile. Plaintiffs cannot plead conspiracy of these parties as allegedly configured within the corporate entity, Perdue Farms, Inc.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED and this case is DISMISSED WITH PREJUDICE. A separate Order follows.


Dated:          July 6, 2011                              /s/_____
                                                          Richard D. Bennett
                                                          United States District Judge